No. 2566

Second Circuit

LUKENS STEEL CO. v. DYER

(May 22, 1928. Opinion and Decree.)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Builders and Buildings—Par. 19; Mechanics' Privileges—Par. 2, 12.

Under Section 11 of Act No. 139 of 1922, a law regarding building contracts and liens, the seller of structural steel cannot hold the owner of the building liable where he sold same to another dealer who · thereafter resold to the owner of the building, the vendor not having furnished material for the owner or any contractor or sub-contractor.

Appeal from the First Judicial District Court, Parish of Caddo. Hon. T. F. Bell, Judge.

Action by Lukens Steel Company against F. L. Dyer.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Wilkinson, Lewis and Wilkinson, of Shreveport, attorneys for plaintiff, appellant.

Cook and Cook, of Shreveport, attorneys for defendant, appellee.

ODOM, J. The plaintiff brings this suit to recover $2353.95, less a credit of $692.16, for a lot of structural steel which the defendant used in the erection of a building in the City of Shreveport.

It is alleged that in May 1924, one P. H. Selser, proprietor of Selser Manufacturing & Sales Company of Shreveport, Louisiana, entered into a contract with F. L. Dyer, whereby "said Selser was to furnish 55,387 pounds of structural steel to be used in the construction of the Dyer building" and that said Selser, in pursuance of said contract, ordered said steel from petitioner on May 22, 1924, and contracted and agreed to pay for same as per the itemized account attached to and made a part of the petition.

It is further alleged that—

"said Selser was by said contract the agent of defendant for the purchase of said steel and, in the alternative, if he was not the agent of defendant, said Selser occupied the position of a contractor with defendant in the construction of said building."

Further alleging that said material was used in the erection of Dyer's building, which was erected by him on his own account "without contract for the construction thereof or bond," and that said material was not paid for, plaintiff claims that Dyer owes it for the material and that it has a lien and privilege on said building and the lot on which the same is situated, for which it asks recognition.

It is alleged that the building was completed on or about July 31, 1924, and that on August 5, 1924, plaintiff filed in

the mortgage office an affidavit setting forth its claim and served notice thereof upon the defendant.

The defendant, for answer, denied that he was due plaintiff anything, and alleged that he purchased said steel from the Selser Manufacturing & Sales Company through P. H. Selser, proprietor, and that he made payment for the same to the said Selser Manufacturing & Sales Company in accordance with his contract with it.

There was judgment in the District Court rejecting plaintiff's demands and it prosecutes this appeal.

## OPINION

F. L. Dyer, the defendant, owned certain lots in the City of Shreveport on which he erected a building on his own account, without letting a contract therefor.

For the construction of the building he needed some structural steel. P. H. Selser, who lived in Shreveport, sought the order for the steel in the name of Selser Manufacturing & Sales Company. He made the following proposal on a printed letterhead:

"Phone 6665 'We Sell It' 217 Ardis Building SEL-SER MANUFACTURER'S SALES CO. "F. L. Dyer          Shreveport, La. "F. L. Dyer, "City.
          RE: F. L. Dyer Building.
"We propose to furnish the following materials under the terms and conditions stipulated below, free on cars:
"All structural steel as shown on sheets Nos. 9, 7 & 8 including all H. Columns, I Beams, and connections, awning angles, angle lintels, awning rods, transom cast iron bases and bearing plates complete f. o. b. New Orleans, La. with full freight allowed to Shreveport, La._____$2485.00
"We are in a position to make immediately delivery of this material as we

have same in stock and can start fabrication immediately."
(Signed)
    "SELSER   MANUFACTURER'S   SALES
                    By P. H. Selser.
"Accepted:
    (Signed)  "F. L. Dyer."

This order was promptly filled, it seems, and, on June 18, 1924, a bill for the material was presented to Mr. Dyer on a letter-head similar to the above, except the phone number, is given as 6059, and the address is "104 Ardis Building," Shreveport, La., and revites "Sold to F. L. Dyer, City." Then follows a description of the material and amount, as above set out in the proposal. After crediting the amount for freight, a balance is brought down of $2201.64.

On the same day, June 18, 1924, Mr. Dyer made his check on the Continental Bank & Trust Company of Shreveport as follows:

"Pay to the order of SelSer Mfg. Co.
                                 $2201.64
    Signed, F. L. Dyer."

The check is endorsed as follows:

"SelSer Mfg. Co. Credit P. H. Selser account."

The check was paid by the bank on the following day.

The Selser Manufacturer's Sales Co. ordered the steel from the plaintiff which has its office and place of business in New Orleans. We find in the record a sales-sheet made out on plaintiff's letter-head, reading, in part:

"Sold to P. H. Selser, Proprietor,
"Selser Manufacturer's Sales Co.
"Shreveport, La.
"Order No. _____ Date May 22nd, 1924.
          (With terms written in)
"1959-B. Structural Steel for Dyer Bldg.
"shipped to F. L. Dyer, Shreveport, La.
"55,387 lbs     at $4.25_____$2,353.95

"Less credit, by cash, 7-7-24........ 692.16

$1,661.79

By reference to the freight bill filed in the record, we note that the steel was shipped by the plaintiff to "Selser Mfg. Co." at Shreveport. A witness for plaintiff testified that the steel was ordered shipped to F. L. Dyer but that through mistake it was shipped to Selser Mfg. Co.

Mr. Dyer testified that he knew no one in the transaction except the Selser Mfg. Co., represented by P. H. Selser, with whom he had all his dealings.

Mr. S. W. Gilbert, credit manager for the plaintiff company, was asked if F. L. Dyer, either verbally or in writing, had any dealings of any character with the plaintiff company with reference to the steel covered by the bill against Selser, and he answered:

"F. L. Dyer personally did not have any dealings with the Lukens Steel Company with reference to the steel covered by its bill annexed to the direct interrogatories."

In answer to the following direct interrogatory propounded to him:

"The Lukens Steel Company filed a lien and privilege in the mortgage records of Caddo parish, Louisiana, against the F. L. Dyer building on August 5, 1924. Do you know anything about the filing of this lien and privilege and if so, state whether or not this lien and privilege was filed on the advice of your attorneys?"
Mr. Gilbert said:

"When it became evident that we were not to receive payment of our account from the Selser Sales Company, we placed the account in the hands of our attorney at New Orleans, Mr. Justin V. Wolff, for his attention."

As already noted, the plaintiff alleged that Selser was the agent of Dyer in the purchase of the steel and in the alternative, if he was not the agent of Dyer, he "occupied the position of a contractor in the construction of the building."

Plaintiff failed to establish by proof either the main or alternative allegation.

On the contrary, it is proved beyond question that the Selser Mfg. Co., through P. H. Selser, made a direct sale of the material to Dyer. The Selser Mfg. Co. proposed to sell the material, stipulating the kind, quantity and price, and this proposal was accepted by Dyer. Following this proposal and acceptance, the material was delivered and promptly paid for by Dyer.

It is also shown that Selser had nothing to do with the erection of the building, but, on the contrary, that Dyer himself purchased the material and erected it.

But counsel for plaintiff argue that inasmuch as the said material went into Dyer's building and it, the plaintiff, has not been paid, it has a lien and privilege on the building and grounds as furnisher of materials, and it relies upon Section 11 of Act No. 139 of 1922 as granting such lien.

That section of the Act reads, insofar as it is necessary to quote the same, as follows:

"Whenever the owner * * * undertakes the repair, reconstruction, erection or construction of a building or any other work for his own account or for which no contract has been entered into, then any person furnishing services or material or performing any labor on said building or other structure, may record in the mortgage office * * * a certified copy of the building permit or affidavit of claim or any other writing evidencing the same, which recordation shall create a lien and privilege upon the building * * * in favor of said contractor, * * * and furnishers

of material, as their interests may arise, for a period of one year from the completion or acceptance of the building."

Counsel for the plaintiff say in brief:

"We call the court's attention to the fact that the section of the act just quoted (Section 11 of Act No. 139 of 1922) does not require any contract between the owner or builder and the furnisher of the material. The mere fact that the material is furnished for the building is all that the act requires."

Counsel's statement of the law is correct, because the law creates a lien upon buildings in favor of laborers who work in the erection of and those who furnish material for the construction of buildings.

But counsel's conclusion that the defendant in this case is liable to plaintiff, is based upon the false premises that the plaintiff furnished material for the building. The premises upon which the conclusion is based being false, the conclusion is necessarily unsound.

The material which went into the building was not furnished by the plaintiff but by the Selser Mfg. Co. If the latter concern had not been paid for the material it would, of course, have a lien upon the building; but it was paid in full for the material as per the contract.

In bringing the suit, plaintiff proceeded upon the theory, as set out in the petition, that Selser was the agent of Dyer in the purchase of the material, and if not agent, then, in the alternative, that Selser was a contractor under Dyer.

Under those conditions or either of them Dyer would be liable for the unpaid balance due plaintiff.

But Selser was not the agent of defendant nor was he the contractor. He had nothing whatever to do with the erection of the building. Selser represented that his company was a dealer in building material and the record shows that Selser sought the order for the material by written proposal which was accepted by Dyer.

The transaction between the Selser Mfg. Co. and the defendant was a complete sale. There was the thing, the price and consent. The material was delivered by Selser and the price was paid by defendant. The Selser Mfg. Co. owned the material, which it had purchased from the plaintiff.

The transaction between the plaintiff and Selser constituted a complete sale of the material. The goods were ordered by Selser in the name of his company, segregated from plaintiff's common stock, billed out as sold to him, shipped and charged to him, and plaintiff finally received from him a partial payment on the bill.

There is nothing to indicate that plaintiff intended originally to look to Dyer for the bill. Mr. Gilbert, sales manager for plaintiff, testified:

"When it became evident that we were not to receive payment of our account from the Selser Sales Company, we placed the account in the hands of our attorney at New Orleans."

The attorney, it seems, advised that plaintiff could hold Dyer for the bill.

Here is a case where a wholesale dealer in building material sold and delivered goods to another dealer and its vendee sold and delivered the same material to a

builder who paid the owner the price. All these transactions took place in the usual course and in the open market. The fact that plaintiff's vendee failed to pay the price gives it no right to pursue the ultimate consumer of the goods under the building contract laws of the State, where the purchaser was himself an independent dealer and had no connection with the erection of the building as contractor or sub-contractor.

Counsel say that Dyer should have required Selser to produce a receipted bill for the material. We do not think so. Plaintiff sold its goods to Selser and took chances on collecting from him. When he failed, it pursued defendant, who used them.

It is argued that Dyer knew or should have known that the Selser Mfg. Co. had no material of its own to sell and that he knew or should have known that the material was being ordered from another. There is nothing in the record to show that. But conceding that Dyer did know that Selser was to order the material from another, that would not destroy the fact, as disclosed by the record, that the Selser Mfg. Co. became the owner of it and sold it to him.

Plaintiff not having furnished the material for Dyer or any contractor or sub-contractor, but having sold same to another who, in turn, sold it to defendant, has no claim against defendant or his property.

The judgment appealed from is correct, and is accordingly affirmed with costs in both courts.